Lawrence SPRAGUE, Plaintiff-Respondent,

v.

Howard RILEY, Defendant-Appellant.

No. 24822.

Kansas City Court of Appeals.

Missouri.

April 1, 1968.

**264**

Nolan Chapman, Jr., Chapman & Chapman, Chillicothe, for appellant.

Harry L. Porter, Marceline, Jack Lukehart, Brunswick, Ralph Smith, Jr., Richard P. Bruening, Houts, James, McCanse & Larison, Kansas City, for respondent.

SPERRY, Commissioner.

Plaintiff, a business invitee of defendant, who was the owner and operator of a grocery store located in Brookfield, Mo., sued defendant for damages growing out of personal injuries which he suffered when he slipped, fell, and broke his kneecap on the concrete surface of the entranceway to the store. Verdict and judgment was for plaintiff and against defendant, in the sum of $12500.00. Defendant appeals.

Among other things, defendant contends that no submissible case was made. This calls for a full review of the evidence. We will accept as true all facts established by substantial evidence which tend to support plaintiff's right to recover, and we will draw all reasonable inferences therefrom which are favorable to plaintiff's theory. We will reject all of defendant's evidence which tends to defeat plaintiff's claim.

All of the facts affecting liability came from the testimony of plaintiff. He stated that, for five years prior to January 19th, 1963, he had been an employee of Western Dairy Co.; that his duties required that he deliver inside of defendant's store, quantities of milk; that he made such deliveries twice daily, five days per week; that he was well acquainted with the store, its entranceways and inside arrangements; that one such daily delivery was made at about 6:30 A.M.; that on such occasions, plaintiff carried cartons or cases of milk into the back door of the store on a two wheel cart; that the second daily delivery was made during the afternoons when he would carry the milk in his arms, into the front entranceway of the store; that, on the morning of the day he was injured, he made a delivery as usual, at about 6:30 A.M., through the back door; that then he drove around his route, encompassing about eighty five miles and, at about 12:30 P.M., he returned to the store to make a second delivery; that this delivery was required to be made through the front entranceway, the floor of which sloped upward from the sidewalk to two doors, one for entrance into the store and one for exit therefrom; that he intended to enter the north door.

He stated that he was familiar with this entranceway, which he sometimes referred to as a "vestibule"; that it had remained in the same structural condition for the five years he had used it. He did not state whether or not it was enclosed. He stated that, as he travelled his route, after he left the store in the morning, he visited a number of towns within the general area; that he ordinarily served thirty-nine customers on this route; that it was raining, snowing, sleeting, freezing, and that the wind was blowing; that the entire area was affected by these weather conditions; that all roads (and the whole area) were icy and slick; that when the wind was blowing, under similar conditions, he had previously seen snow and other precipitation blown into the entranceway; that he had observed this fact in the past and knew that the wind was blowing into the entranceway on his occasion.

Plaintiff stated that he parked the truck to make this delivery, on the north side of Ri-Mar's store; that when he stepped off the truck, on the south side, he stepped in snow; that when he walked to the north side of the truck to pick up the milk the sidewalk was icy; that his helper entered the store to pick up empty containers; that he took two wooden crates, one on top of

the other; that each contained four one gallon jugs of milk; that each crate was eighteen inches high and sixteen inches square; that he carried them in his hands and arms, in front of him; that the bottom was at about his belt; that the top of the crates came up to his nose; that he didn't know the weight but estimated it to be sixty-five pounds, but he did not deny that the total weight of the milk, including jugs and crates, could have been one hundred five pounds. He stated that, because of the crates, he could not see the sidewalk, but that he could see to his side; that it was slippery as he walked; that he knew he might slip wherever he walked. He said that he slipped and fell on the inclined entranceway; that the jugs were broken and the milk ran out, where it froze; that he cleaned up the mess and, as he did so, he noticed that the entranceway was covered with ice on that area not affected by the milk; that nothing had been done to eliminate the icy condition.

At the conclusion of plaintiff's evidence defendant filed motion for directed verdict. A similar motion was filed at the close of all of the evidence. The first and second grounds therefor, in both, were (1) the evidence shows that the proximate cause of plaintiff's injuries and damage was not any negligence of defendant and, (2) the evidence has not affirmatively shown that plaintiff was exercising ordinary care for his own safety. Defendant filed motion for judgment in accordance with his motion for directed verdict and, in the alternative, for a new trial. The court failed to act on this motion and defendant appealed.

Defendant here contends that the court erred in not sustaining his motion for a directed verdict because the evidence shows, as a matter of law, that plaintiff did not exercise ordinary care for his own safety; that the injuries suffered by plaintiff were the result of his own negligence; and that defendant was not negligent.

In Moran v. Hartenbach and Wheeler, 423 S.W.2d 53, page 56, the St. Louis Court of Appeals (Nov. 21, 1967), said: "The owner or occupant of land is not an insurer of the safety of even a business invitee. Gruetzemacher v. Billings, Mo., 348 S.W. 2d 952; Heine v. John R. Thompson Co. Mo., 330 S.W.2d 867; Lindquist v. S. S. Kresge Co., 345 Mo. 849, 136 S.W.2d 303. The true basis of the owner's or occupant's liability is his superior knowledge of an unreasonable risk of harm of which the invitee, in the exercise of ordinary care, does not or should not know. Harbourn v. Katz Drug Co., Mo., 318 S.W.2d 226; Stafford v. Fred Wolferman, Inc., Mo., 307 S.W.2d 468; Capobianco v. Yacovelli Restaurant, Inc., Mo.App., 360 S.W.2d 302. Thus the alternative duty to keep the premises in a reasonably safe condition for an invitee or to warn him of the dangerous condition, 2 Restatement of the Law of Torts, § 343, p. 938, applies only to defects or conditions which are in the nature of hidden dangers, traps, snares, pitfalls and the like, in that they are known to the inviter but not known to the invitee, and would not be observed by the latter in the exercise of ordinary care. Harbourn v. Katz Drug Co., supra; Dixon v. General Grocery Co., Mo., 293 S.W.2d 415; Small v. Ralston-Purina Co., Mo.App., 202 S.W.2d 533. And where the condition relied on is so open and obvious that it is or should be as apparent to the invitee as it is to the owner or occupant there is no duty on the latter to warn the invitee of the condition, and he is not liable for injuries resulting from such an open and obvious condition. Sellens v. Christman, Mo., 418 S.W. 2d 6; Douglas v. Douglas, Mo., 255 S.W.2d 756; Murray v. D'Oench Co., 347 Mo. 365, 147 S.W.2d 623; Ilgenfritz v. Missouri Power & Light Co., 340 Mo. 648, 101 S.W. 2d 723. * * *".

In Wilburn v. Southwestern Bell Telephone Co., 382 S.W.2d 49, (Mo.App.), many of the authorities cited above are discussed, as are others.

In the case at bar plaintiff was thoroughly familiar with the entranceway where he fell. He knew that, in the past, when the

weather was inclement and when the wind was blowing, snow and other precipitation had blown into the entranceway. He knew that it had been raining, sleeting, snowing, freezing and blowing throughout that area. He knew that the streets and sidewalks (including the sidewalk adjacent to the entranceway) was icy and slick. He attempted to carry two large crates of milk in front of his body, extending upward to his nose, into the entranceway. He knew that he could not see the surface of the sidewalk or of the entranceway immediately in front of him. When he stepped on the entranceway he fell because it was covered with ice and freezing moisture which had blown onto it. He saw this condition when he looked at it, after he fell.

The basis of liability of an owner or occupier of land to a business invitee is his superior knowledge of the dangerous condition causing the injury. He is not liable for injuries caused by conditions that are obvious, or as well known to the injured party as to the occupier of the premises. Vogt v. Wurmb, 318 Mo. 471, 300 S.W. 278, 279; Harbourn v. Katz, 318 S.W.2d 226, 228–229. An invitee has an affirmative duty to exercise ordinary care for his own safety. He must look where he is walking. To look is to see if the dangerous condition is obvious. If he is aware of the situation, or it is such that he could not but be conscious of it, and of the consequences of disregarding it, *if he were using his faculties*, he cannot recover. Summa v. Morgan Real Estate Co., 350 Mo. 205, 165 S.W.2d 390, 393. Plaintiff knew the generally hazardous conditions of all streets and sidewalks in the area. If he had looked prior to entering upon the entranceway he could have seen its slick icy condition for it was apparent to him when he did look. He encumbered himself in such a manner as to be unable to see what was obvious. He was not in the exercise of ordinary care for his own safety.

The judgment is reversed.

MAUGHMER, C., concurs.

PER CURIAM:

The above opinion by SPERRY, C., is adopted as the opinion of the court.

All concur.